RANDY S. GROSSMAN
United States Attorney
NICOLE E. BREDARIOL
Massachusetts Bar No. 696484
Special Assistant U.S. Attorney
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8419
Email: Nicole.Bredariol@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JULIAN ANDRES ANCHUNDIA (1),<br><br>Defendant. | Case No.: 21-CR-1952-DMS<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: June 24, 2022<br>Time: 9:00 a.m. |

The UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Nicole E. Bredariol, Special Assistant United States Attorney, hereby files its Sentencing Memorandum as to Defendant 1, Julian Andres Anchundia. This memorandum is based upon the files and records of the case.

I. INTRODUCTION

Julian Andres ANCHUNDIA ("ANCHUNDIA"), John Alexander AGUIRRE ("AGUIRRE"), Fernando Francisco GONZALEZ Zamora ("Gonzalez"), and Arizon Salazar MONTANO ("MONTANO"), (Defendants), are before the Court for sentencing after pleading guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel in violation of 46 U.S.C. § 70503 and Operation of a Semi-Submersible Vessel without Nationality in violation of 18 U.S.C. § 2285. A substantial sentence is warranted here. Maritime cocaine smuggling is complicated. The skill necessary to transport cocaine on the high seas, on a low profile or semi-submersible vessel, takes skill and experience.

Engaging in a journey that takes days and requires navigating hundreds of miles on the ocean takes extensive preparation. Defendant relied on his skill and acumen during this extended journey to try and achieve a significant reward – a payday. Furthermore, when discovered by law enforcement, defendants fled, attempted to evade being caught, and tied to spoliate evidence. Committed to their flight, defendants failed to stop when confronted with warning shots and only stopped when the Coast Guard shot out their engines and forced their flight to end. After taking into consideration the seriousness of the offense, including the level of skill and preparation required to transport approximately 2,240 kilograms of cocaine on a semi-submersible vessel and the remaining 3553(a) factors, the United States recommends 100 months' custody, concurrent, followed by 5 years' supervised release, no fine, and a $200 special assessment.

## II.     STATEMENT OF FACTS

### A.     The Crime

On June 14, 2021, a Maritime Patrol Aircraft (MPA) detected a semi-submersible vessel approximately 128 nautical miles northwest of Esmeraldas, Ecuador, in international waters.[1] MPA captured video and images of the semi-submersible vessel underway.



---

[1] 18 U.S.C. § 2285(h) states "semi-submersible vessel" has the meaning given in 46 U.S.C. § 70502. 46 U.S.C. § 70502 explains "[t]he term 'semi-submersible vessel' means any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water, including both manned and unmanned watercraft." As demonstrated by the pictures above and below, this vessel meets the definition of a semi-submersible.



 



United States Coast Guard Cutter ("USCGC") JAMES was nearby and diverted to intercept the semi-submersible vessel. JAMES launched an unmanned aerial surveillance (UAS), a helicopter, and a small boat with an embarked boarding team to interdict the semi-submersible vessel. The helicopter crew approached the semi-submersible vessel and ordered the four defendants on board (including Defendant ANCHUNDIA) to stop. The

defendants did not comply, so the helicopter crew fired warning shots across the semi-submersible vessel's bow. The vessel remained underway at the same speed so the helicopter crew conducted disabling fire, shooting out the engines on the semi-submersible vessel and forcing the defendants to stop. The helicopter crew then observed the defendants throw small items over the side and into the water – later identified as documents and a GPS device.

The semi-submersible vessel was not flying a physical flag, had no registration number or other markings on the hull, and no registration documents. No one claimed to be the master of the vessel, and no one made a claim of nationality for the vessel. The defendants claimed to be Ecuadorian nationals with a last port of call of Colombia. Based on all this, the Coast Guard treated the vessel as without nationality ("TWON") and conducted a full law enforcement boarding during which they recovered approximately 2,243 kilograms of cocaine on board the semi-submersible vessel.

 

Ultimately, agents discovered Defendant left Colombia in the semi-submersible vessel to transport and deliver the cocaine. The bales of cocaine and additional supplies were inside the semi-submersible vessel.

 

### B. Defendant's Statements

During the presentence interview Defendant adopted the factual basis portion of his plea agreement. He also said he committed the offense because he needed money.

## III.   THE GUIDELINES

### A.   Calculation

Under USSG § 2D1.1 (c)(1), the base offense level is 38. The United States is not recommending any enhancements nor any reductions for role. There is a two-level upward adjustment for operation of a semi-submersible under USSG § 2D1.1 (b)(3), a two-level downward departure for safety valve, and a three-level downward departure for acceptance of responsibility. Defendant is in Criminal History Category I per the PSR. The resulting guideline range is 168 to 210 months in custody. Pursuant to the plea agreement the United States is recommending 100 months in custody - a substantial variance of 68 months or approximately a forty percent reduction to the low end of the guideline range.

### B.   Government Recommendation

Several factors justify the Government's recommendation. First, Defendant pled guilty to Possession of Cocaine with Intent to Distribute on Board a Vessel and Operation of a Semi-Submersible vessel. Maritime drug smuggling is a complicated endeavor. The evidence demonstrates Defendant coordinated an at sea voyage spanning hundreds of nautical miles to transport a vast amount of cocaine valued at millions of dollars.

Transporting cocaine on the high seas takes considerable skill and experience. That skill promised a significant reward. For Defendant that reward was monetary.

Additionally, in this case defendants tried to evade law enforcement and spoliate potential evidence. They failed to stop when the Coast Guard approached, only ceasing their flight when the Coast Guard forced them through disabling fire, and jettisoned a GPS device.

Second, this was a complicated smuggling venture for which Defendant's preparation, expertise, experience, and efforts were critical. He acted as more than a mere drug courier which this district often encounters for sentencing in land-based drug smuggling ventures. Maritime smuggling requires specialized skills, and men like Defendant are recruited because of their familiarity with the maritime environment. A semi-submersible vessel is different from the go-fast vessel, or open hull panga style vessels, typically seen in this District for use in maritime drug smuggling. It requires additional skill to navigate this type of vessel. Notably, under 18 United States Code Section 2285 Congress made the mere operation of a semi-submersible vessel illegal because it declared "that operating or embarking in a submersible vessel or semi-submersible vessel without nationality and on an international voyage is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States." Drug Trafficking Vessel Interdiction Act of 2008, S. 3598, 110th Congress, § 101 (2008). Therefore, the mere operation of this vessel, even if it had not been carrying over 2,240 kilograms of cocaine, is illegal.

Additionally, Defendant is Ecuadorian, but departed from Colombia and was discovered over a hundred miles from his home country. Arriving to the interdiction location required him to prepare to be away from home for an extended period of time, and to help navigate the vessel over a multi-day journey. Over this journey he was required to deal with all the difficulties that navigating on the high seas brings, including weather, sea state, and difficult communications. This requires expertise and experience and cannot be

performed by just anyone. Unlike a simple drug courier who may only be responsible for drugs for a few hours and a few miles during a border crossing, this journey required Defendant to be responsible for the cocaine for an extended period in both duration and geography.

Third, the United States does not believe an adjustment for role, either aggravating or mitigating, is appropriate in this case. The United States is not arguing for a navigator enhancement. However, a minor role reduction is not appropriate in this case. The defendant bears the burden of proving that he is entitled to a downward adjustment based on his role in the offense." *United States v. Cantrell*, 433 F.3d 1269, 1282 (9th Cir. 2006). The suggestion Defendant was only a "marine helper"[2] on the vessel is supported by no evidence other than his self-serving statements. *See United States v. Rigby*, 896 F.2d 392, 395 (9th Cir. 1990) (upholding district court's finding that the defendant had not established that he was a minor participant since there was no evidence, other than defendant's self-serving statement, to support such a finding). But, even if you accept Defendant's self-serving statements that he only assisted with the voyage, he has still not met his burden to demonstrate he is substantially less culpable than the average participant. The defendants operated as a team, utilizing tremendous skill, training, and acumen as discussed. The three were literally stuck in the same boat, and all were critical and equally culpable for its voyage. The Defendant is not less culpable than the average participant— let alone *substantially* less culpable.

Defendant also understood the scope of this crime, he was to transport a vast amount of cocaine from Colombia up north. He was involved in planning for and preparing for the criminal activity. As one of four men on this vessel in the middle of the high seas he was in control of the vessel. Finally, Defendant stood to benefit from the criminal activity, expecting a financial reward. He participated extensively in the criminal activity, stood to

---

[2] Defendant claims that he was a "marinero" which literally means "sailor."

benefit from it, and exercised discretion in performing the acts to further the criminal enterprise. This weights against a role reduction.

Fourth, Defendant was responsible for trafficking an astounding amount of cocaine. To put it in perspective, this was over 220 times the amount of cocaine required for a ten-year mandatory minimum, and almost five times the amount of cocaine that establishes the highest possible base offense level in the sentencing guidelines. While Defendant may claim he did not intend to come to the United States, his role in transporting the cocaine in the semi-submersible vessel was critical to the success of the trafficking venture and it was foreseeable the cocaine was bound for the United States. During a maritime drug smuggling venture the value of the drugs, and potential profit, increases exponentially. Had this cocaine successfully made it to the United States it would have been worth tens of millions of dollars. There is no doubt that had this highly dangerous drug successfully made it to the United States it could have led to extensive harm.

Fifth, given the need to generally deter others it is essential the sentence reflects the seriousness of this offense and the potential harm from trafficking cocaine on the high seas. Only a significant sentence will discourage future potential traffickers from engaging in similar crimes. The incentive to make relatively large sums of money for trafficking drugs must be combated with the deterrence of significant sentences for engaging in this criminal activity.  There is a need to impose a sentence that adequately deters others from engaging in this criminal activity for the hopes of financial reward.

Sixth, the substantial variance already recommended by the United States appropriately accounts for any variances based on the history and characteristics of the defendant or COVID-19. Defendant was entrusted to smuggle over 2,240 kg of cocaine while operating far from land with some autonomy on a semi-submersible vessel. Defendant's sentence should reflect his extensive culpability.

All of these factors combined justify a 100-month sentence.

**C.    Conclusion**

1 |      Based on the 3553(a) factors a custodial sentence of 100 months, concurrent,
2 | followed by 5 years' supervised release, no fine, and a $200 special assessment is
3 | appropriate.

5 | DATED: June 17, 2022            Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

*/s/ Nicole E. Bredariol*
Nicole E. Bredariol
Special Assistant U.S. Attorney